THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES E. SELLARS, Defendant-Appellant.

Second District   No. 79-835

Opinion filed February 27, 1981.

Mary Robinson and Manuel Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko, William L. Browers, and Gary J. Anderson, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

After stipulated bench trials defendant, James E. Sellars, was found guilty of the burglaries of the Naperville Pizza Hut and Dooley's Meat Market and was sentenced to concurrent terms of three years' imprisonment for each burglary.

On appeal defendant contends (1) that an illegal search of his apartment by third parties acting as agents of the police require suppression of items seized therein and defendant's subsequent confession; and (2) that his confession was involuntary as induced by promises of leniency by the police.

At the pretrial hearing of the motion to suppress his confession,

defendant testified that his apartment in Aurora had been burglarized in early March 1978 and a calculator and radio taken from it. He stated that on March 15 two Naperville police officers approached him at a gas station in Naperville and Officer James Paulitz informed defendant that he had acquired a calculator and radio which had been taken from defendant's apartment by "his people." Defendant testified the officer told him they would like to have him come down to the police station and talk to them and that they would make it easy on him if he would do so and would get a warrant if he would not. According to defendant they also advised him they would talk to the State's Attorney about getting a low bond and would try to get a low sentence. Defendant drove his car to the station, meeting the officers, and remained there talking to them until about 10 p.m., when he left to pick up a friend at work. He was not told he was arrested, nor was he placed in a cell. Defendant was ultimately arrested for these burglaries on April 9.

Defendant further testified that while in the police station he was questioned by Officer Paulitz and another officer who informed him they had the calculator and radio from his apartment with his fingerprints on them and that these items had been taken in burglaries and received by the police from the people who had entered defendant's apartment. Defendant stated that he repeatedly told the officers he did not wish to make a statement about certain burglaries of which they inquired, and they again said they would get an arrest warrant if he did not cooperate but would talk to the State's Attorney about getting the charge reduced and a low bond if he did cooperate. Defendant testified that he then admitted committing eight or nine burglaries because of the promises made by the officers and the fact they had the property which had been recovered from defendant's apartment. He also testified that he subsequently learned that Harry Lauder, Edward Domick and Richard Burton had broken into his apartment, stolen the articles and turned them over to the police. Lauder had previously lived with defendant in that apartment.

On cross-examination defendant testified that the officers had informed him of his *Miranda* rights both at the gas station and at the police station, that he understood them and that after giving his statement he had signed a rights waiver form and another document giving the officers permission to search his apartment.

Officer Paulitz also testified at the hearing, stating that on February 29, 1978, Harry Lauder and Richard Burton approached him on the street and asked whether he had picked up defendant for the burglary of Dooley's Meat Market. Lauder informed the officer that defendant had told him he had committed that offense and had a radio from Dooley's in his apartment. Paulitz then told Lauder that if he did see the radio in the apartment "to let me know, to tell me and that I could attempt to get a

search warrant for the apartment to obtain the radio." Paulitz stated that he did not instruct Lauder or the others to break into defendant's apartment. Officer Paulitz testified further that about five hours after his conversation with the men, they appeared at the police station with the radio from the Dooley Meat Market and a calculator from another burglary. Paulitz told them he had to know how they acquired these articles, and Lauder said he and the others had broken into Sellar's apartment by jimmying the lock.

Officer Paulitz further testified that two weeks later on March 15, he and his partner, Officer Thomas McQueen, approached defendant who was sitting in a car at a gas station. He informed defendant that his name had been mentioned in a burglary investigation and advised him of his *Miranda* rights. Paulitz told defendant that he was not under arrest but asked if he would come to the police station to talk about the burglary. Paulitz denied mentioning at the gas station that Lauder had brought the radio to him, that he could get a warrant for defendant or that he would talk to the State's Attorney about reducing charges against him. He stated that he and Officer McQueen then met defendant at the police station at about 9:15 p.m., and they again informed him of his *Miranda* rights, which defendant said he understood. Defendant told the officers at that time that he had to leave by 10 p.m. and was informed he was not under arrest and could leave any time he wished.

Paulitz stated that he informed defendant that if he cooperated he would speak to the State's Attorney and the judge and try to get a low bond, but that it was up to the judge. The interview lasted for about 45 minutes, during which time defendant answered all questions asked of him, was not abused, and at no time indicated he wished to terminate the discussion. Defendant also told the officers that there was an item from another burglary in his apartment and gave them written permission to search it. Paulitz identified defendant's written inculpatory statement and consent to search, which had been signed by Sellars.

On cross-examination Paulitz stated that he had not personally filed charges for burglary against the three men after they had informed him of their entry of defendant's apartment. He also stated that he had informed defendant that he (Paulitz) would tell the State's Attorney that defendant was cooperating in order to get defendant to talk to him and that he also informed defendant that it was up to the State's Attorney to reduce charges. Paulitz did go before Judge Norgle, who had previously placed defendant on probation, and requested a low bond because Sellars had cooperated with the police, and he also so informed the State's Attorney.

Officer Thomas McQueen was called to testify and corroborated Paulitz' testimony that defendant had been informed of his rights and had

expressed no reluctance in talking about the burglaries he had committed. McQueen could not recall any discussion relating to the lowering of defendant's bond or that Paulitz would talk to the State's Attorney, but he was present later when Paulitz did speak to the assistant State's Attorney about setting a low bond for defendant. McQueen was not present when Lauder and the other two men returned with the articles from Sellars' apartment.

After hearing arguments, the trial court denied defendant's motion to suppress finding that the burglary of defendant's apartment was not by direction of the police and that his confession was voluntary. At a later date, defendant was permitted to renew his motion on the grounds that a new witness, Harry Lauder, who was not available at the earlier hearing, could be called to testify. At this hearing Lauder testified that he, Domick, Burton and Ann Vogel broke into Sellars' apartment in Aurora, removed a radio and calculator and took them to the Naperville police station. He stated that Officer Paulitz had previously asked if they could get any evidence or if they knew of any way the officers could get a search warrant for defendant's apartment. The officers had asked if these men would go to the apartment and find the stolen articles while defendant was there to aid them in getting a search warrant. Lauder informed the officers that he didn't think they would be invited over and thought the only way was by breaking in. The officers said they couldn't tell him to do that and rather they go over there and see the articles so that the officers could get a search warrant.

Lauder also testified that Paulitz did not tell him to break into the apartment, that he should be invited, see the articles and return to the police so they could get a search warrant. He further stated that the police said they would try to find a way to help them if he helped them but was not able to recall if he had any reason to cooperate with the police. He stated, however, that he may have had a charge pending against him at that time.

The trial court again denied defendant's motion to suppress, finding that the search of defendant's apartment was not an act of the police, who had only told these men they might get evidence for a search warrant while in the defendant's apartment at his invitation. The court also found that no direction had been given by the officers for an illegal entry, they were not present when it occurred, and they did not intend that it should occur. The court concluded that as the police did not participate in the illegal search of defendant's apartment, his confession was not acquired as a result of it. The court further found that defendant's confession was voluntary.

We consider first whether the search of defendant's apartment

violated his fourth amendment rights requiring suppression of the evidence seized therein and also his confession as resulting from an illegal search.

■■ It is well established that the fourth amendment is a limitation only upon governmental officials and that evidence seized by private persons need not be suppressed from a criminal trial. (*Burdeau v. McDowell* (1921), 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574.) "[E]vidence which would be inadmissible if seized by the police is admissible if seized by some nonpolice related third-party * * *." *People v. Nunn* (1973), 55 Ill. .2d 344, 353, 304 N.E.2d 81, 87, *cert. denied* (1974), 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608.

Defendant contends that the illegal entry of his apartment was carried out with the knowledge and approval of the Naperville police. He points to Officer Paulitz' testimony that the officer wanted these men to personally see the radio in Sellars' apartment so that Paulitz could get a search warrant and deprecates Paulitz' further testimony that he did not instruct them to break into the apartment. Defendant also deprecates the testimony of Lauder, the only other witness called regarding that issue, that they were not instructed to break in but were advised to be invited in and then seek to view the suspect articles and return to the police with that information, who would then seek a search warrant.

The trial court rejected these arguments, determining from the evidence it considered creditable that the officers did not enlist the three men as their agents to unlawfully enter defendant's apartment and seize the suspect articles from it. It is the function of the trial court to resolve disputed questions of fact, and we see no basis to interfere with its determination in this case. (See *People v. Higgins* (1972), 50 Ill. 2d 221, 225, 278 N.E.2d 68, 71, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195.) There is actually little dispute in the facts, although defendant draws different, and unsupported, conclusions from the general circumstances presented in this case. Lauder and his friends came to the officers alerting them to defendant's involvement in a burglary and the possible presence of stolen property in his apartment. The officers, reasonably enough, were interested and sought additional evidence sufficient to support issuance of a search warrant. No one testified that the officers suggested that these men illegally enter defendant's apartment; the evidence is, to the contrary, that they were instructed to try to be invited in by defendant with whom Lauder was acquainted.

■■ The cases relied upon by defendant do not aid him under the factual circumstances of this case. (See, *e.g.*, *People v. McKinnon* (1972), 7 Cal. 3d 899, 500 P.2d 1097, 103 Cal. Rptr. 897, *cert. denied* (1973), 411 U.S. 931, 36 L. Ed. 2d 390, 93 S. Ct. 1891; *Stapleton v. Superior Court of Los Angeles County* (1968), 70 Cal. 2d 97, 447 P.2d 967, 73 Cal. Rptr. 575; *Moody v.*

*United States* (D.C. App. 1960), 163 A.2d 337.) These courts held that private searches may be deemed governmental action where the police permit a private illegal search to occur for their benefit, but only if the police had actual knowledge of the search and an opportunity to prevent it. (*Cf. United States v. Valen* (3d Cir. 1973), 479 F.2d 467, *cert. denied* (1974), 419 U.S. 901, 42 L. Ed. 2d 147, 95 S. Ct. 185; *Herbert v. State* (1970), 10 Md. App. 279, 269 A.2d 430; *Wolf v. State* (Miss. 1973), 281 So. 2d 445, 449; *State v. Gundlach* (1974), 192 Neb. 692, 224 N.W.2d 167, *cert. denied* (1975), 421 U.S. 933, 44 L. Ed. 2d 92, 95 S. Ct. 1663.) We conclude that the trial court's determination that the private search of defendant's apartment was not police directed was supported by the evidence, and it will not be disturbed.

We next consider whether defendant's confession was involuntary as induced by promises of leniency by the officers.

It is undisputed that when defendant said he might have difficulty making bond, Officer Paulitz advised him that if he cooperated the officers would speak to the State's Attorney and judge and try to get a lower bond for him. This promise was qualified by the further advice that the judge would have the final word. The officer denied defendant's assertion that he also promised to talk to the State's Attorney about reducing the charges against defendant, stating he only advised defendant he would inform the State's Attorney that defendant had cooperated if he did so and that it was up to the State's Attorney whether any charges would be reduced. Although the record is somewhat equivocal on the question of whether a reduction in charge was mentioned before or after defendant's confession, the trial court determined that no offers of leniency were made sufficient to induce defendant to confess.

At the time in question defendant was 19 years old and had nearly completed high school. He had previously been convicted of contributing to the delinquency of a minor, for which he served 14 days in jail, and at the time of the present offenses was on probation after conviction of a misdemeanor theft. The conversation with the officers lasted about an hour, defendant was not in custody, and there is no suggestion he was abused in any way. Although defendant testified that he said many times he did not wish to give a statement to the officers, they testified, to the contrary, that he responded freely to all of their questions.

The cases relied upon by defendant again do not support his argument. (See, *e.g., People v. Martorano* (1935), 359 Ill. 258, 194 N.E. 505 (police promise to go the limit to make the burden light for defendant); *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E. 50; *People v. Peck* (1974), 18 Ill. App. 3d 112, 309 N.E.2d 346 (promise to defendant he would be "cut loose" if he cooperated); *People v. Jones* (1972), 8 Ill. App. 3d 849, 291 N.E.2d 305.) The facts in the present case, at most, are that the police

promised to advise the State's Attorney that defendant cooperated and to seek a low bond for him. Defendant was at the same time informed that the question of bond was up to the judge and that any question of a reduced charge was up to the State's Attorney. There was no unequivocal promise of anything to defendant, and he did not testify that he was in any way misled by these representations.

■■ This court considered a similar contention in *People v. Carroll* (1977), 50 Ill. App. 3d 946, 365 N.E.2d 1352, and rejected it. There, too, police officers had advised defendant they would recommend a low bond to the State's Attorney if he cooperated. We held that such a remark was not so coercive as to induce defendant to admit to a crime he did not commit, and his confession was deemed voluntary. In the present case defendant had not been arrested or charged, and he was free to leave the police station when he wished to do so. The "promise," whether made before or after his confession, to inform the State's Attorney defendant had cooperated would, of course, be apparent to the State's Attorney when he saw defendant's confession. It can hardly be considered as an offer of leniency. (See *People v. Hubbard* (1973), 55 Ill. 2d 142, 152, 302 N.E.2d 609, 614.) From our review of the record, we think the trial judge could well conclude that the officer never told defendant he would ask the State's Attorney to consider reduced charges, but only that he would indicate defendant had cooperated. The judge could also conclude from that record that the "promise" was made after defendant had confessed. See also *People v. Higgins* (1972), 50 Ill. 2d 221, 225, 278 N.E.2d 68, 70, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195; *People v. Baine* (1980), 82 Ill. App. 3d 604, 610, 403 N.E.2d 57, 61; *People v. Slaughter* (1978), 59 Ill. App. 3d 159, 162, 376 N.E.2d 33, 36.

In considering the totality of the circumstances leading to defendant's confession, we conclude the finding of the trial court that it was not induced by promises and was voluntary is fully supported by the evidence.

For these reasons the judgment of the Circuit Court of Du Page County will be affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.