23474

The STATE, Respondent v. Earnest COHEN, Appellant.

(409 S.E. (2d) 383)

Supreme Court

*Assistant Appellate Defender Franklin W. Draper* of the

*South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., Miller W. Shealy, Jr.,* Columbia, and *Sol. Randolph Murdaugh, III,* Hampton, *for respondent.*

Heard Jan. 21, 1991; Decided Sept. 9, 1991.

Rehearing Denied Oct. 8, 1991.

TOAL, Justice:

This appeal presents the question of whether or not appellant (Cohen) was convicted based on evidence obtained in an illegal government search.

### FACTS

In December of 1988, a United Parcel Service (UPS) employee, Terry Daniels (Daniels), delivered a package to the home of police officer Brookie Priester. While Daniels was there, Priester told him that he suspected that some of the packages delivered by another UPS employee, Brady Kemp (Kemp), contained illegal drugs. Priester asked Daniels to tell Kemp to contact him. Daniels informed the union steward, Roy Landrum, who then told Kemp what Daniels had said in the presence of Kemp's supervisor, Scott Giles (Giles). Giles instructed Kemp to bring to his attention the next package addressed to Cohen. No further contact with the police was initiated by any of the UPS employees.

A week or two later, Kemp noticed a package addressed to Cohen and took it to another of his supervisors, William Ferguson (Ferguson). Ferguson did not know of Priester's suspicions. Upon noting that the picture on the outside of the box was of a breakable item and shaking the box, Ferguson thought the contents of the package were broken. Pursuant to company policy, he opened the package and discovered a quantity of vials of crack cocaine. He then called the police.

In response to that call, police officer Strom arrived with a drug-sniffing dog. He instructed Ferguson to rewrap the package and put it back on the conveyor belt with other items to see if the dog could identify it. When this had been accomplished, the officer unwrapped the box and identified its con-

tents. The package was then taken to the laboratory of the South Carolina Law Enforcement Division in Columbia where its contents were tested and confirmed to be crack cocaine.

The police obtained a warrant to search appellant's house and closed the package so that it could be delivered. After appellant accepted delivery of the package, the officers executed the warrant and seized the package and other drug paraphernalia.

At trial, appellant moved to suppress the cocaine seized by the police on the ground that it was the product of an illegal government search. After testimony from several witnesses and argument from counsel, the trial judge denied the motion and ruled that the evidence was admissible because the search was not illegal, since the UPS employees were not agents of the police.

### LAW/ANALYSIS

Cohen argues that the trial judge erred in refusing to rule that the search of his package by the police constituted an illegal search in violation of his right to privacy in that UPS acted as an agent of the government.

The Fourth Amendment does not bar a search and seizure, even an arbitrary one, effected by a private party on his own initiative. It does, however, bar evidence resulting from such intrusions if the private party acted as an instrument or agent of the government. *Skinner v. Railway Labor Executive Ass'n*, 489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed. (2d) 639 (1989). *See also United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. (2d) 85 (1984); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. (2d) 564 (1971). The party challenging admission of evidence has the burden to show sufficient government involvement in the private citizen's conduct to warrant fourth amendment scrutiny. *United States v. Snowadzki*, 723 F. (2d) 1427 (9th Cir. 1984); *State v. Sanders*, 327 N.C. 319, 395 S.E. (2d) 412 (1990).

This area of search and seizure law is somewhat nebulous since a decision must be based on the facts and circumstances of each case. Generally, however, it may be said that presearch contacts between a government official and private citizen, whether or not apparently intended by

the government to prompt the citizen to render some type of assistance, are not deemed sufficient to make a search by the private citizen other than a "private" search. W. Lafave, *Search and Seizure, A Treatise on the Fourth Amendment,* § 1.8(b) (2d) Ed. 1987). Even where the government encouragement was rather strong and specific, yet short of an explicit request for a search, courts have been inclined to declare the search private nonetheless if there was in addition a legitimate private purpose behind the search. *Id.* at 196.

Some jurisdictions hold that the critical factors in determining whether a private citizen's search or seizure constitutes government action are: (1) whether the government instigated, participated, or acquiesced in the citizen's conduct; and (2) whether the citizen engaged in the search with the intent to further law enforcement efforts. *United States v. Bazan,* 807 F. (2d) 1200 (5th Cir. 1986); *United States v. Lambert,* 771 F. (2d) 83 (6th Cir. 1985); *United States v. Snowadzki, supra; United States v. Miller,* 688 F. (2d) 652 (9th Cir. 1982).

After examining police involvement in private searches, several courts have found that the involvement was insufficient to subject the private searches to constitutional scrutiny. In *United States v. Jennings,* 653 F. (2d) 107 (4th Cir. 1981), a Drug Enforcement Administration (DEA) agent communicated to the chief of security of American Airlines that a certain woman was suspected of sending drugs hidden in shoe boxes to her husband via American's parcel service. American then opened the next box sent by the woman and discovered a quantity of drugs. The DEA agent was even present when the package was opened, but the Fourth Circuit still held that the involvement of the DEA agent was insufficient to render American's search of the parcel a government search. The court noted that there was reason other than the agent's tip for American to have been suspicious. The court also emphasized that American demonstrated a legitimate concern and served its own purposes, and not those of the government, by investigating a package thought to contain contraband.

Various courts have reached similar results in the following cases: *United States v. Bazan,* 807 F. (2d) 1200 (5th Cir. 1986), *cert. den.* 481 U.S. 1038, 107 S. Ct. 1976, 95 L. Ed. (2d) 816 (1987) (former deputy, who did not inform government he was going to conduct a search, was not state agent when asked by

government to call if he saw anything strange); *State v. Sanders, supra* (police officer's involvement both before and after private citizen's search and seizure of evidence not sufficient to transform citizen's private, unsolicited act of seizing evidence into government search); *Interest of P.E.A.*, 754 P. (2d) 382 (Colo. 1988) (error to suppress marijuana found in student's car during search by principal, notwithstanding information from police officer who remained at school during search prompted and guided search); *People v. Sellars*, 93 Ill. App. (3d) 744, 49 Ill. Dec. 187, 417 N.E. (2d) 877 (1981) (where police officers suggested that persons who told officer about defendant's connection with burglaries get themselves invited to defendant's home in order to report back to police, but men broke into defendant's apartment and removed evidence, break-in was not directed by police and evidence was admissible); *Smith v. State*, 267 Ark. 1138, 594 S.W. (2d) 255 (Ark. App. 1980) (evidence seized by victim of burglary was product of private search where sheriff's office told victim names of suspects, including that of defendant and instructed victim to contact sheriff if victim discovered any leads, and victim conducted own investigation, held defendant at gunpoint, and delivered defendant and evidence to sheriff).

Based on the authorities we have reviewed, we hold that an analysis of whether a private citizen's search and seizure is attributable to the State requires an inquiry into the totality of the circumstances. Factors to be considered include: the citizen's motivation for the search or seizure; the degree of governmental involvement, such as advice, encouragement, knowledge about the nature of the citizen's activities, and the legality of the conduct encouraged by the police. *State v. Sanders, supra.*

In this case, UPS never consulted with the police. Kemp was directed by his superiors to call them, not Officer Priester, when he found another package addressed to Cohen. Through Kemp, UPS knew that Kemp delivered packages to Cohen on a more than usual basis. We find that UPS was not motivated to assist law enforcement when it searched and seized Cohen's package but appears to have been motivated by a concern that it was delivering contraband.

As for the degree of government involvement, Priester only instructed Kemp to call him if another package arrived. The phone call would have been a legal activity. No officer asked Kemp or UPS to engage in illegal activity. No officer ever encouraged, instructed, or even knew beforehand of UPS's search and seizure of Cohen's package, nor was any officer present when that was done.

In light of all of the circumstances, Priester's involvement before UPS conducted its search fails to transform UPS's private, unsolicited, unsupervised act of seizing evidence into a government search. Cohen has failed to show that any of the employees of UPS were agents of the State.

The record shows that the evidence was sufficient to warrant the trial court's ruling that the UPS employees were not agents of the government and that, therefore, the search of the package was not illegal. Accordingly, we hold that appellant was not convicted based on evidence that was the product of an illegal governmental search. We would, however, note that the line between government and private searches is a very fine one. This case is limited to its facts, which show that UPS conducted an independent, private search of appellant's package.

We dispose of appellant's remaining issues pursuant to Supreme Court Rule 23.

Affirmed.

GREGORY, C.J., and HARWELL and CHANDLER, JJ., concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice (dissenting):

I respectfully dissent. The majority concludes that police involvement in the conduct of the UPS employees was insufficient to remove their acts from the category of a "private search." In my view, the majority's contention is forcefully refuted by the facts set forth in its opinion. I would reverse.

The majority enunciates two factors critical in determining whether or not search or seizure by a private citizen constitutes government action: (1) Whether the government instigated, participated, or acquiesced in the citizen's conduct, and (2) whether the citizen engaged in the search with the intent

to further law enforcement efforts. *United States v. Bazan,* 807 F. (2d) 1200 (5th Cir. 1986); *United States v. Lambert,* 771 F. (2d) 83 (6th Cir. 1985); *United States v. Snowadzki,* 723 F. (2d) 1427 (9th Cir. 1984); *United States v. Miller,* 688 F. (2d) 652 (9th Cir. 1982).

As to the first factor, the search in question was instigated by Police Officer Brookie Priester. The record reflects no indication that any UPS employee suspected a connection between the appellant and contraband shipments. The overt instigation of Officer Priester set up surveillance which led to interception of the next package addressed to appellant. It is clear that without police involvement, the evidence used to convict the appellant would not have come to light. *See Skinner v. Railway Labor Executive Ass'n,* 489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed. (2d) 639 (1989).

I would find that the second factor was established when UPS employees acted in concert with police with the obvious intent to further law enforcement efforts. In direct response to explicit police instructions, UPS employees intercepted and searched the package, discovered the contraband, and reported to police officers who continued uninterruptedly their supervision of the transaction.

The identical test articulated by the majority leads to the inescapable conclusion that at all times subsequent to the initial request by Officer Priester, UPS employees acted as agents of the government. When scrutinized under the requirements of the fourth amendment to the United States Constitution and Article I, Section 10 of the South Carolina Constitution, my reading of this record fully convinces me that appellant's constitutional rights were violated.

Unwilling to concede that the end justifies the means, I share the view of Justices Black and White that "[u]nfortunately, grave evils such as the narcotics traffic can too easily cause threats to our basic liberties by making attractive the adoption of constitutionally forbidden shortcuts that might suppress and blot out more quickly the unpopular and dangerous conduct." *Harmelin v. Michigan,* — U.S. —, 111 S. Ct. 2680, 2717, 115 L. Ed. (2d) 836 (1991) (White, J. dissenting) (citing *Turner v. United States,* 396 U.S. 398, 427, 90 S. Ct. 642, 658, 24 L. Ed. (2d) 610 (1970) (Black, J. dissenting)).

I concur in the majority view that the line between govern-

mental and private search is indeed fine. But there is a definitive line—and its broad purposes eclipse any validity of the reactionary trend to eviscerate constitutional protections in the hope of curing specific societal ills. It is my firm belief that in this instance, that line has been transgressed. I would reverse.