528 S.E.2d 661

**The STATE, Petitioner,**

v.

**William T. BROCKMAN, Respondent.**

**No. 25069.**

Supreme Court of South Carolina.

Heard April 20, 1999.

Decided Feb. 22, 2000.

58

Attorney General Charles M. Condon, Chief Deputy, Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for petitioner.

J. Falkner Wilkes, of Meglic & Wilkes, of Greenville, for respondent.

TOAL, Justice:

In this criminal matter, we granted certiorari to review the Court of Appeals' decision in *State v. Brockman*, 329 S.C. 115, 494 S.E.2d 440 (Ct.App.1997). We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

On December 17, 1995, Officers Fitzgerald and Crawford responded to a domestic disturbance call at the house of Sharon Peak in Greenville County. While in the house, the officers uncovered cocaine in the compartment of a moped belonging to William T. Brockman ("Defendant"). Defendant was arrested and charged with trafficking in cocaine, trafficking in crack cocaine, and two counts of possession with intent to distribute a controlled substance within proximity of a school, playground, or park. Prior to trial, defense counsel moved to suppress evidence seized by the officers without a search warrant. The trial judge conducted an *in camera* hearing on the motion.

At the hearing, the officers testified that when they arrived at Mrs. Peak's house, she was at home with her daughter. Mrs. Peak told the police that Defendant was her son and she had kicked him out of the house, but he kept coming back in an attempt to get his moped. Mrs. Peak and Defendant had had a violent altercation before the police arrived. The officers testified that Mrs. Peak and her daughter told them that

the moped contained narcotics, and they wanted the moped out of the residence. The officers informed Mrs. Peak they could not remove the moped from the residence.

The officers eventually asked Mrs. Peak where the moped was located. She indicated it was in her basement. The officers testified Mrs. Peak invited them down into the basement to look at the moped. Once in the basement, Mrs. Peak began to pull the moped out from a laundry room. Officer Fitzgerald, noticing she was having difficulty moving the moped, assisted her in pulling it out into the light. Mrs. Peak then repeated her request that the officers take the moped and "get out." The officers again responded that they could not take the moped. Mrs. Peak then asked: "What if I go into the moped?" Officer Crawford testified that he told her: "Well that's your business. I'm not here to influence you in any way. If that's what you want to do then that's what you want to do." Mrs. Peak and her daughter attempted to go through the moped's compartments, finding them locked. Mrs. Peak obtained a screwdriver and began prying open the compartments. She opened up a storage compartment underneath the seat of the moped where she found a zip lock bag containing cocaine. The daughter threw the bag into the laundry room.[1] Mrs. Peak and her daughter also uncovered a pistol in the compartment. The officers immediately secured the gun and unloaded it for their safety.

Mrs. Peak's *in camera* testimony differed somewhat from the officers' testimony. Mrs. Peak claimed she never told the officers that she thought the moped contained drugs. She further claimed it was at the officers' insistence that they go down to the basement to look at the moped. She stated the officers were examining the moped "very closely" while she and her daughter were prying open the compartments.

The trial judge ruled the evidence was admissible. He found the officers were credible and that Mrs. Peak's testimony did not impugn their credibility. The judge further ruled that the search was not a governmental search, stating: "I'm taking into consideration the citizen's motivation for the

---

1. The daughter was fumbling with the bag in the laundry room and had apparently attempted to take some cash. Officer Crawford discovered the additional cash in a hamper in the laundry room.

search or seizure and in this case it was to secure the safety of her premises and to prevent any further contact between she and her son.... I don't think that [the officers'] advice or encouragement went to the extent that it constituted a Fourth Amendment seizure or search so I would leave it as a private search." At the end of trial, the trial judge further ruled that even if it were a government search, Defendant did not have a legitimate expectation of privacy and thus, the Fourth Amendment was not implicated.

The Court of Appeals reversed the trial court, finding Mrs. Peak had no authority to give third-party consent, and her search amounted to an illegal government search for purposes of the Fourth Amendment. *See State v. Brockman,* 329 S.C. 115, 494 S.E.2d 440 (Ct.App.1997). We granted the State's petition for a writ of certiorari to consider the following issues:

(1) Did the Court of Appeals properly declare that the Fourth Amendment issues presented in this case should be reviewed *de novo* pursuant to *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)?

(2) Did the Court of Appeals correctly rule that Defendant had a legitimate expectation of privacy in the moped kept at his mother's residence?

(3) Did the Court of Appeals correctly rule that the private search constituted government action for purposes of the Fourth Amendment?

## Law/Analysis

In this certiorari petition, the State presents an important procedural issue regarding the appellate standard of review in Fourth Amendment search and seizure cases. The State also presents two substantive issues which can be summarized in one general question: Did the search of Defendant's moped violate the Fourth Amendment. In addressing this general question, we will consider the State's arguments in the following manner. The first substantive issue we will address is whether Mrs. Peak and her daughter were acting as instruments or agents of the police in searching Defendant's moped. If we determine they were not, the Fourth Amendment would not be implicated, and the evidence would be admissible. *See*

*State v. Cohen,* 305 S.C. 432, 409 S.E.2d 383 (1991) (holding that the Fourth Amendment does not bar a search and seizure, even an arbitrary one, effected by a private party on his own initiative). However, if we find the Peaks were acting as agents of the police, the next issue is whether Defendant had a legitimate expectation of privacy in the compartments of his moped located at his mother's house. If not, the Fourth Amendment would again not be implicated. *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (a legitimate expectation of privacy is necessary to trigger Fourth Amendment protections). On the other hand, if Defendant did have a legitimate expectation of privacy in his moped, the search would violate the Fourth Amendment because the police failed to secure a search warrant. *See State v. Bultron,* 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995) (a warrantless search is *per se* unreasonable and thus violative of the Fourth Amendment unless the search falls within one of the exceptions to the exclusionary rule).

However, before reaching these substantive issues, we first consider the State's contention that the Court of Appeals applied an erroneous standard of review. The Court of Appeals stated it would defer to the trial court's factual findings and review them only for clear error and lack of evidentiary support, but its review would be *de novo* on the mixed questions of law and fact pursuant to *Ornelas v. United States.*[2] Ascertaining the proper standard of review for Fourth Amendment issues is a puzzling endeavor for appellate courts and the attorneys who appear before them. Thus, instead of providing a routine invocation of the standard of review, we will attempt to give a concrete explanation of how

---

2. In *State v. Rodriquez,* 323 S.C. 484, 476 S.E.2d 161 (Ct.App.1996), the Court of Appeals for the first time held that it would follow *Ornelas* and apply *de novo* review to the question whether a seizure under the Fourth Amendment was reasonable. In *State v. Smith,* 329 S.C. 550, 495 S.E.2d 798 (Ct.App.1998), the Court of Appeals again followed *Ornelas* and applied *de novo* review to the determination of reasonable suspicion. The court also cited this Court's decision in *State v. Asbury,* 328 S.C. 187, 493 S.E.2d 349 (1997), as being consistent with the *Ornelas de novo* standard. In footnote 2 of its opinion, the court stated: "While it appears there is no substantial difference between the state and federal standards, we find the result of this case remains the same when reviewed under either standard." *Smith,* 329 S.C. at 555 n. 2, 495 S.E.2d at 801 n. 2.

exactly this Court will review the issues in this case. In doing so, we will first discuss *Ornelas.* Then, we will turn to the private search issue in this case and discuss our standard of review.

In *Ornelas,* police officers detained two men in a parking lot and searched their car. The police discovered and seized cocaine from the car. A federal magistrate judge concluded the circumstances gave the officers reasonable suspicion to conduct an investigatory stop, but not probable cause to conduct a warrantless search of the car. The district court adopted the magistrate's recommendation with respect to reasonable suspicion, but not its reasoning as to probable cause. In reviewing the district court's determinations, the Seventh Circuit Court of Appeals applied a clearly erroneous standard of review, affirming the reasonable suspicion analysis but reversing the probable cause determination. However, other circuits had in the past applied *de novo* review to such determinations. The United States Supreme Court granted certiorari to resolve the conflict among the circuits over the applicable standard of review.

The Court in *Ornelas* noted that the determination of reasonable suspicion and probable cause was a two-step process. First, a court must determine the events which occurred leading up to the stop or search. Second, the court must decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The Court in *Ornelas* stated that the first part of the analysis involved only a determination of historical facts, but the second was a mixed question of law and fact. *See Ornelas,* 517 U.S. at 696–97, 116 S.Ct. at 1662, 134 L.Ed.2d at 919.

The *Ornelas* Court articulated four reasons for applying *de novo* review to ultimate determinations of reasonable suspicion and probable cause for warrantless searches and seizures. First, sweeping deference would result in varying results among trial courts. Second, independent review was necessary to maintain control of, and to clarify the legal principles. Third, *de novo* review tended to unify precedent and give better guidance to law enforcement. Finally, by maintaining deferential review for searches and seizures conducted pursu-

ant to a warrant, but having *de novo* review for warrantless searches, police officers would have an incentive to obtain warrants before searching. The Court argued this standard would satisfy the Fourth Amendment's "strong preference for searches conducted pursuant to a warrant." *Ornelas*, 517 U.S. at 699, 116 S.Ct. at 1663, 134 L.Ed.2d at 920 (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). The Court further stated:

> We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

*Ornelas*, 517 U.S. at 699, 116 S.Ct. at 1663, 134 L.Ed.2d at 920.

There is nothing in the language of *Ornelas* suggesting that the Fourth Amendment mandates *de novo* review of ultimate determinations of reasonable suspicion or probable cause for warrantless searches. At least one state court has held that the *Ornelas* decision is an exercise of federal supervisory power and therefore not binding on state courts. *See State v. Jackson*, 82 Wash.App. 594, 918 P.2d 945 (1996).[3] Many state courts have nonetheless adopted the *Ornelas de novo* standard of review for warrantless searches and seizures.[4]

We find that *Ornelas* is not binding on this Court. Further, even in the federal context, *Ornelas* is limited to an appellate court's review of ultimate determinations of reasonable suspi-

---

**3.** In *Jackson*, the Washington appellate court did not reach the question of whether it would adopt *Ornelas*, noting that the issue in *Jackson* involved when a seizure occurred, rather than whether there was probable cause to support a warrantless search and seizure.

**4.** *E.g., Matter of J.A.*, 962 P.2d 173 (Alaska 1998); *State v. Rogers*, 186 Ariz. 508, 924 P.2d 1027 (1996); *People v. Sweborg*, 293 Ill.App.3d 298, 227 Ill.Dec. 807, 688 N.E.2d 144 (1997); *State v. Chapman*, 23 Kan. App.2d 999, 939 P.2d 950 (1997); *Richardson v. Commonwealth*, 975 S.W.2d 932 (Ky.App.1998); *Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365, 572 N.W.2d 603 (1998); *State v. Lee*, 585 N.W.2d 378 (Minn.1998); *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998).

cion and probable cause for warrantless searches and seizures. *Ornelas* did not decide that *de novo* review should be applied to all Fourth Amendment issues. Thus, even if we did find *Ornelas* persuasive, it would be inapposite to the issues in the instant case. Finally, there is no basis for concluding that every Fourth Amendment issue of mixed law and fact should be reviewed *de novo.* In *Ornelas,* the Court made the obvious statement that probable cause and reasonable suspicion determinations involved deciding whether the facts of a given case violate a set statutory or constitutional standard. However, simply characterizing this determination as one of mixed law and fact is not dispositive of the proper standard of review, especially in light of the fact that the Court in *Ornelas* continued to retain a more deferential standard of scrutiny for probable cause determinations to issue search warrants. *Ornelas* was merely a supervisory opinion crafted out of that Court's policy concerns, and it in no way clarifies our standard of review in the instant case. With that said, we will turn to the private search issue.

The State argues that the Court of Appeals incorrectly ruled that the search in this case constituted government action for purposes of the Fourth Amendment. We agree.

■ As a threshold matter we must determine the appropriate standard of review to apply in considering the trial court's ruling below. In suppression hearings, trial courts are faced with deciding whether a search violated the parameters of the Fourth Amendment. This decision may entail a number of antecedent determinations, each of which is inherently fact-specific. In the instant case, one such determination made by the trial court was that the Peaks were not acting as instruments or agents of law enforcement. In other words, the trial court found that the Fourth Amendment had not been violated because the search was private. The test for making this determination entails an inquiry into the totality of the circumstances. *State v. Cohen,* 305 S.C. 432, 409 S.E.2d 383 (1991). This inquiry encompasses a number of relevant factors including: the citizen's motivation for the search or seizure; the degree of governmental involvement, such as advice, encouragement, knowledge about the nature of the citizen's activities; and the legality of the conduct encouraged by the police. *Id.*

■ This private search determination is largely a question of fact in light of all the circumstances. *See State v. Murillo,* 113 N.M. 186, 824 P.2d 326 (Ct.App.1991). In the civil context, it is analogous to the determination of the existence of an agency relationship, which we have consistently held is a question of fact. *See American Fed. Bank v. Number One Main Joint Venture,* 321 S.C. 169, 467 S.E.2d 439 (1996). Another apt analogy arises in the federal context. In *United States v. Tompkins,* 130 F.3d 117 (5th Cir.1997), the Fifth Circuit addressed the question whether the *Ornelas de novo* standard should be applied to a determination whether a defendant's consent to search was given voluntarily. Like our private search inquiry under *Cohen,* voluntariness under federal case law is determined from the totality of the circumstances surrounding the search and includes consideration of a number of relevant factors. The court in *Tompkins* noted that the United States Supreme Court in a post-*Ornelas* decision [5] had held that voluntariness of consent to search was solely a question of fact. The Fifth Circuit therefore held that a determination of voluntariness did not trigger *de novo* review under *Ornelas.*

■ Therefore, we will review the trial court's ruling like any other factual finding and reverse if there is clear error. We will affirm if there is any evidence to support the ruling.

■ The Fourth Amendment does not bar a search and seizure, even an arbitrary one, effected by a private party on his own initiative. *Cohen, supra.* It does, however, bar evidence arising from such intrusions if the private party acted as an instrument or agent of the government. *Id.* In *Cohen,* we stated:

> [I]t may be said that presearch contacts between a government official and private citizen, whether or not apparently intended by the government to prompt the citizen to render some type of assistance, are not deemed sufficient to make a search by the private citizen other than a "private" search. Even where the government encouragement was rather strong and specific, yet short of an explicit request for a search, courts have been inclined to declare the search

---

5. *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

private nonetheless if there was in addition a legitimate private purpose behind the search.

*Id.* at 434–35, 409 S.E.2d at 385. In applying the *Cohen* factors to the instant case, the Court of Appeals found the police officers' knowledge of, and acquiescence in, the potentially criminal conduct by Mrs. Peak and her daughter constituted a government search for purposes of the Fourth Amendment. The court stated it would defer to the trial judge's primary reliance on the officers' testimony that Mrs. Peak and her daughter were searching the moped for "dope," ostensibly to give the deputies reason to seize the moped and remove it from the premises. The Court of Appeals nonetheless emphasized the fact that Mrs. Peak and her daughter "arguably" violated S.C.Code § 16–21–90 (1985) [6] in searching the moped. *See Brockman,* 329 S.C. at 131 n. 8, 494 S.E.2d at 448 n. 8.

■ The totality of the circumstances must be considered when evaluating whether a private search constitutes government action. *See Cohen, supra.* The potential illegality of any encouraged conduct is one factor. In the instant case, it was Mrs. Peak who summoned the police to her house to help control a domestic dispute with Defendant. The officers testified that from the moment they arrived, Mrs. Peak pleaded with them to remove the moped from the premises. The officers repeatedly told her that they could not take the moped. Although the officers were present during the search, they were there at the request of Mrs. Peak. There is no evidence the police contacted Mrs. Peak prior to the search for the purpose of investigating Defendant's drug activities. The officers' presence at the house was for the specific purpose of controlling a domestic dispute. The trial judge made the factual finding that, in searching the moped, Mrs. Peak was motivated by the desire to have the moped removed from her house to avoid any future altercation with her son. Mrs. Peak

---

6. Section 16–21–90 provides:

A person who, with intent and without right to do so, damages a vehicle or damages or removes any of its parts or components is guilty of a misdemeanor.

A person who, without right to do so and with intent to commit a crime, tampers with a vehicle or goes in or on it or works or attempts to work any of its parts or components or sets or attempts to set it in motion is guilty of a misdemeanor.

thus had a legitimate, independent justification for conducting the search. We find there is evidence to support the trial court's finding that the search was private. *See United States v. Smythe*, 84 F.3d 1240 (10th Cir.1996) (finding the search was not a governmental search implicating the Fourth Amendment because the private searcher had a legitimate, independent motivation to search the package). The Court of Appeals is therefore reversed on this issue. Having found the search was private, we need not determine whether Defendant had a legitimate expectation of privacy in his moped.

### CONCLUSION

Based on the foregoing, the Court of Appeals is **REVERSED.**

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.