664 S.E.2d 460

The STATE, Appellant,

v.

Eston GROOME, Respondent.

No. 26510.

Supreme Court of South Carolina.

Heard April 15, 2008.
Decided June 30, 2008.

---

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Salley W. Elliott, and Assistant Attorney General Julie M. Thames, all of Columbia, and Solicitor Robert Mills Ariail, of Greenville, for Appellant.

J. Falkner Wilkes of Greenville, and James H. Price, III, of Price, Ashmore & Beasley, of Greenville, for Respondent.

Justice PLEICONES:

The State appeals a pre-trial circuit court order suppressing drugs found after respondent was stopped at a drivers' license checkpoint. We affirm.

## FACTS

In response to civilian "crime stoppers" tips of speeding and drug activity, a "Directed Patrol Unit" set up a drivers' license checkpoint one evening in Greenville. A "Directed Patrol Unit" is a specialized crime suppression group; a K–9 team with a drug dog was assigned to the road-block. The dog and his handler walked up and down the line of cars as they were stopped at the checkpoint.

Respondent was stopped and surrendered his drivers license. As the officer walked back to check respondent's tag, he radioed in and learned respondent's license was suspended. Respondent was asked to pull his car into a nearby parking lot, then exit it, and meet the officer at the rear of the vehicle.

The K–9 officer and dog left the line and approached respondent's car. The dog alerted, the car was searched, and marijuana seeds were found on the floorboards. Respondent was placed in the back of a patrol car before being transported to the law enforcement center. After respondent exited the police vehicle at the center, the officer found a baggie containing two other bags, each having white powder in it. The baggies were found to contain 13.02 grams of cocaine. Respondent was "Mirandized" at the station, and admitted smoking marijuana but denied the cocaine was his.

Respondent moved to suppress the drugs alleging the road-block was violative of the Fourth Amendment. The trial judge agreed, and the State's appeal follows.

## SCOPE OF REVIEW

■ A trial court's Fourth Amendment suppression ruling must be affirmed if supported by any evidence, and an appellate court may reverse only when there is clear error. *State v. Brockman,* 339 S.C. 57, 528 S.E.2d 661 (2000).

## ISSUES

1) Whether the circuit court erred in finding the primary purpose of the checkpoint was for general crime control and therefore it was violative of the Fourth Amendment under *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)?

2) Whether the circuit court erred in holding that even if the primary purpose was a license checkpoint and there was no *Edmond* flaw, the roadblock none-the-less violated the Fourth Amendment under *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)?

## ANALYSIS

The controlling decision in this matter is *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). In *Edmond,* the Court held that a police checkpoint whose primary purpose is general crime control in Edmond narcotics interdiction is unreasonable under the Fourth Amendment.

Here, the circuit court judge acknowledged there was conflicting evidence on the true purpose of the checkpoint, but was persuaded the primary purpose was general crime suppression rather then merely a drivers' license checkpoint. He pointed to the following facts to support his conclusion:

1) the checkpoint was conducted by the Directed Patrol Unit, which is assigned specifically to deal with crime suppression issues;

2) a K–9 patrol unit with a nationally certified drug dog team was participating; and,

3) the State presented no evidence as to the plan, procedures, or duration of the roadblock, nor was any evidence of a protocol introduced and as the Supreme Court noted in Edmond, without such information "law enforcement

authorities would be able to establish checkpoints for virtually any purpose so long as they include a license or sobriety check."

The circuit court went on to find that even if the primary purpose were a license checkpoint and thus the roadblock passed constitutional muster under *Edmond,* the roadblock would still violate the Fourth Amendment under *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). *Brown* established a three part balancing test for determining the constitutionality of a traffic checkpoint:

1) the gravity of the public interest served by the seizure;

2) the degree to which the seizure serves the public interest; and,

3) the severity of the interference with individual liberty.

The trial judge held the first and third factors easily weighed in the State's favor, but found that the State presented no evidence on the second factor.

■ The State first argues the trial judge erred in finding the primary purpose here was suppression of drug activity. It does not argue that there is no evidence to support the ruling, but instead contends the judge placed "undue emphasis" on certain facts. Under this Court's limited scope of review, the finding that the primary purpose of the roadblock was general crime suppression is supported by the evidence, and the conclusion that it violated the Fourth Amendment under Edmond must be affirmed. *State v. Brockman, supra.*

■ The State next argues the trial judge abused his discretion finding the State failed to meet the second *Brown* factor, the "effectiveness" requirement. The State argues that it need not introduce evidence about the specific effectiveness of this roadblock because, by its very nature, every license check roadblock determines whether the driver is legally licensed. The State's position that license check roadblocks are *ipso facto* constitutional, thereby eliminating the requirement of effectiveness from the *Brown* formula relies upon *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). While *Sitz* does criticize "searching examination of effectiveness" by trial courts, it retains the requirement that the State produce empirical data

to support the effectiveness of its roadblock. *Sitz* at 454 ("unlike [*Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660] (1979), this case [does not involve] a complete absence of empirical data. . . ."). The record supports the trial court's finding that the State failed to produce any evidence satisfying the second prong of the *Brown* test.

## CONCLUSION

There is evidence in the record supporting the trial judge's finding that the primary purpose of this roadblock was general crime suppression and therefore his conclusion that the roadblock violated Edmond must be affirmed. *State v. Brockman, supra.* Even if we were to disagree with this finding, the record supports the trial judge's secondary holding that the State's failure to produce any evidence on the second prong of the *Brown v. Texas* test renders the checkpoint unconstitutional. *Id.* Accordingly, the order suppressing the evidence is

**AFFIRMED.**

MOORE, WALLER and BEATTY, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL:

I respectfully dissent. I would reverse the trial court's order suppressing the evidence and hold that this checkpoint did not violate the Fourth Amendment.

In *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), the United States Supreme Court held that the Fourth Amendment prohibits law enforcement from setting up a traffic checkpoint where the "programmatic" primary purpose is general crime control. The relevant jurisprudence instructs that the test to determine the primary purpose of a checkpoint is an objective test, and that the examining court should "consider all the available evidence in order to determine the relevant primary purpose." *Ferguson v. City of Charleston,* 532 U.S. 67, 81, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (citing *Edmond,* 531 U.S. at 45–47, 121 S.Ct. 447).

In my view, there is no evidence in the record to support the trial court's finding that the primary purpose of this checkpoint was general crime control. The record shows that in accordance with the sheriff's department's guidelines, law enforcement officers placed signs on each road approaching the checkpoint alerting drivers to the checkpoint. Law enforcement officers stopped every vehicle, detained the drivers for no more than two minutes, and only after ascertaining probable cause would they ask the driver to pull off the road into a parking lot for further questioning. Additionally, an officer testified that the purpose of the checkpoint was to verify that every driver had a valid license and registration. Considering all the evidence in the record, I do not believe that the primary purpose of this checkpoint was general crime prevention, nor do I believe that this checkpoint allowed officers to exercise standardless and unconstrained discretion. *See Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (invalidating discretionary "spot checking" in which the officer stopped random motorists on public highways solely for the purpose of checking the drivers' license and registration).

Further, in my opinion, the majority errs in suggesting that *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) requires the State to provide empirical data regarding the effectiveness of checkpoints or that *Mich. Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) retained this requirement. In ruling on the constitutionality of a suspicionless checkpoint in which police stopped every vehicle, the *Sitz* court noted that the case did not involve "a complete absence of empirical data." *Id.* at 454 However, the Supreme Court went on to hold that the second prong of the *Brown* test "was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger" and that "for purposes of Fourth Amendment analysis . . . [this decision] remains with the governmental officials." *Sitz*, 496 U.S. at 454, 110 S.Ct. 2481.

In my view, the balance of the public interest and the severity of the interference with individual liberty clearly weighs in favor of this checkpoint. As noted by the trial

court, the intrusion on individual liberty was minimal and the State has a high interest in preventing unlicensed or uninsured drivers from operating vehicles. In my opinion, this checkpoint provides an effective method of curtailing this problem in that every vehicle was stopped and every driver was required to produce their license, registration, and proof of insurance. Moreover, the fact remains that decisions regarding the techniques and methods of combating roadway dangers remains with law enforcement. *See Id.* Perhaps most significant, however, is that this checkpoint modeled the types of checkpoints that have been upheld as constitutional under the Fourth Amendment. *See Sitz,* 496 U.S. at 455, 110 S.Ct. 2481 (holding that a suspicionless seizure where law enforcement briefly stopped all motorists crossing the checkpoint did not violate the Fourth Amendment); *Prouse,* 440 U.S. at 663, 99 S.Ct. 1391 (distinguishing between the unconstitutional seizure of drivers without reasonable suspicion and the "[q]uestioning of all oncoming traffic at roadblock-type stops"); *United States v. Martinez–Fuerte,* 428 U.S. 543, 566, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (holding that "stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment"). Indeed, while *Edmond* held that the Fourth Amendment prohibits a suspicionless stop whose "programmatic" primary purpose is general crime control, the "holding [ ] [did] nothing to alter the constitutional status of the sobriety and border checkpoints that [the United States Supreme Court] approved in *Sitz* and *Martinez–Fuerte,* or of the type of traffic checkpoint that we suggested would be lawful in *Prouse.*" *Edmond* at 47, 121 S.Ct. 447.

For these reasons, I would hold that the primary purpose of this checkpoint was not general crime prevention and that the checkpoint did not violate Appellant's Fourth Amendment rights.