2499

The STATE, Respondent v. Ricky ABRAMS, Appellant.

(471 S.E. (2d) 716)

Court of Appeals

*Chief Attorney Daniel T. Stacey,* of the *South Carolina Office of Appellate Defense,* of Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh* and *Assistant Deputy Attor-*

*ney General Salley W. Elliott,* all of Columbia; and *Solicitor Wade S. Kolb,* of Sumter, *for respondent.*

Heard Mar. 6, 1996.

Decided Apr. 15, 1996; Reh. Den. June 20, 1996.

*Per Curiam:*

Ricky Abrams appeals his conviction for possession with intent to distribute crack cocaine within close proximity of a school. Abrams claims the trial judge erred in denying his motion to suppress evidence pursuant to the Fourth Amendment of the United States Constitution, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. (2d) 889 (1968), and *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed. (2d) 334 (1993). We reverse.

At the suppression hearing, Officers Jack Ray and Todd Prince testified they received a call at 3:45 a.m. to investigate a civil disturbance with possible drug activity at a bar called "Noone's." They arrived in the area within three minutes and saw Abrams and two other persons walking away from Noone's. They stopped Abrams to see if he knew anything about the disturbance.

The officers patted Abrams down for weapons because the police had had problems with drug activity and shootings in the area on prior occasions. During the pat-down, Officer Ray felt a "hard instrument" in Abram's right front pocket. He described the object as "tube like" and "about the size of a shotgun shell." Believing the object to be a container for carrying drugs, he pulled it out of Abrams's pocket. In fact, it was a "Tylenol" bottle covered in black tape. Neither officer could see the contents, but, based on their experience, they immediately realized it was something frequently used to transport drugs. Upon opening the bottle, they discovered it contained crack cocaine. They placed Abrams under arrest and, upon a further search, also discovered drug paraphernalia.

The trial judge denied the motion to suppress, and found both the *Terry* stop and the subsequent pat-down justified and reasonable. The judge noted the officers had reasonable suspicion criminal activity had occurred, that is, the civil disturbance with related drug activity at 3:45 a.m. Also, the officers reasonable suspected Abrams had something to do with

the disturbance because they saw him and two others leaving the scene three minutes after receiving the call. The judge further found the pat-down for weapons justified, the scope of the search proper under *Minnesota v. Dickerson,* and the warrantless seizure of the container proper. He then found, having properly seized the container, under the totality of the circumstances, the officers were further justified in opening the container and seizing the contraband.

On appeal, Abrams argues the officers did not have reasonable suspicion to stop him, and the search exceeded the limits prescribed by *Terry v. Ohio.*[1] We find the stop was valid, but the scope of the search was not.

The police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that the person is involved in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. (2d) 889 (1968); *State v. Robinson,* 306 S.C. 399, 412 S.E. (2d) 411 (1991); *State v. Culbreath,* 300 S.C. 232, 387 S.E. (2d) 255 (1990). In this case, the officers had a reasonable suspicion which justified their stop of Abrams. They saw him leaving an area known for drugs, where there had been a civil disturbance potentially involving drug activity, at 3:45 in the morning. The officers were therefore justified in frisking Abrams for weapons to assure their safety. *Terry v. Ohio.* However, once the officers determined Abrams was not armed, they could not carry the intrusiveness of their search further unless the incriminating character of the object discovered during the search was immediately apparent to the officer performing the pat-down. *Minnesota v. Dickerson.*

In *Minnesota v. Dickerson,* the Supreme Court noted the sole purpose of the *Terry* search is not to discover evidence, but to enable a police officer to pursue his or her investigation without fear of violence. *Id.* at 373, 113 S.Ct. at 2136. In *Dickerson,* the police officer testified:

> "[A]s I pat-searched the front of his body, I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane."

[1] Abrams does not challenge the ruling upholding the search of the canister itself once the officers retrieved it from his pocket.

*Id.* at 367, 113 S.Ct. at 2133. The Court held the search exceeded the bounds of *Terry*, and the fruits of the search were properly suppressed. Here, Officer Ray patted Abrams down and felt, using the palm of his hand and his fingers, a "hard instrument" in Abrams's right front pocket. Officer Ray described the object as "tube like" and "about the size of a shotgun shell." He testified at the time he thought the object "could have been a shotgun shell or an instrument used to transport contraband," when he "found out that there were no weapons on [Abrams's] person." At that point, the limited purpose of the *Terry* search was satisfied. Any further search was impermissible and the fruits of the further search should have been suppressed.

Reversed.

CURETON, CONNOR and HEARN, JJ., concur.