495 S.E.2d 798

**The STATE, Respondent,**

v.

**Calvin Basil SMITH a/k/a Elwaldo R. James, Appellant.**

**No. 2776.**

Court of Appeals of South Carolina.

Heard Sept. 10, 1997.

Decided Jan. 5, 1998.

Rehearing Denied Feb. 19, 1998.

552

Deputy Chief Attorney Joseph L. Savitz, III, of SC Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor Thomas E. Pope, York, for respondent.

CONNOR, Judge:

A jury convicted Calvin Basil Smith of simple possession of crack cocaine and resisting arrest. Smith appeals the trial judge's denial of his motion to suppress evidence pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). We affirm.

### FACTS

Lieutenant John Thickens, employed with the Rock Hill Police Department, testified at the suppression hearing, he stopped Smith for driving 45 miles per hour in a 35 mile per hour zone around midnight on January 2, 1993. James Gunning was Smith's passenger. Officer Clifton Russell with the Rock Hill Police Department responded as back up.

Thickens informed Smith he had been stopped for speeding and asked for his license and registration. Smith provided a two-week-old Florida license. Thickens found the car was registered in North Carolina.

When Russell arrived on the scene, he approached the driver's side of the vehicle. He "noticed the driver was acting

[a] little bit edgy, looking around et cetera." He said Smith was "fidgeting and looking around on the inside like looking for a weapon." He stated he "thought for officer safety, better to bring him out of the vehicle to keep him away from any weapons opportunity." He asked Smith to step out and walk to the rear of the vehicle.

Russell asked Smith to place his hands on the trunk of the vehicle. Russell then asked him whether he had any weapons on him. When Smith did not respond, Russell conducted a patdown for weapons.[1] Russell said he felt a bulge on the left side of Smith's jacket. He stated "it was obvious to me it was a baggy of some type" and based on his experience he knew "it was some type of narcotics." When he felt the baggy, Russell asked Smith, "What's this your reefer?" Smith replied, "Yeah, man, that's my reefer." Russell then informed Smith he was under arrest, and asked him to place his hands behind his back.

As Russell attempted to handcuff him, Smith pushed off the trunk, swung around, and hit him in the chest. Russell and Thickens eventually subdued Smith and handcuffed him.

When the officers searched Smith, they found a marijuana cigarette which also contained crack cocaine rolled up in it, and a bag containing 4.72 grams of crack cocaine.

After hearing this testimony and the arguments of counsel, the trial judge denied Smith's motion to suppress. He found there was a "reasonable articulated reason or suspicion" and probable cause to stop Smith's vehicle based on Smith's speeding. He further found the weapons patdown was proper under *Terry*. He concluded Russell lawfully seized the drugs in accordance with the "plain touch" doctrine and Smith's admission that he possessed illegal drugs.

## DISCUSSION

### I. SIMPLE POSSESSION OF CRACK COCAINE CONVICTION

Smith argues the trial judge erred in denying his motion to suppress evidence of the drugs. He asserts Russell had no reasonable suspicion he might be armed and dangerous. Ad-

---

**1.** On cross-examination, Russell testified he asked Smith whether he had any weapons after he felt the bulge in the jacket.

ditionally, he contends the search of his jacket exceeded the lawful bounds of a *Terry* search.

## A. Standard of Review

In *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), the United States Supreme Court held an appellate court should conduct de novo reviews in making determinations of reasonable suspicion to make stops and probable cause to conduct warrantless searches. The Court stated:

[t]he principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.

*Id.* at 696, 116 S.Ct. at 1661–62. The Court instructed, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 699, 116 S.Ct. at 1663; *see State v. Asbury,* 328 S.C. 187, 193, 493 S.E.2d 349, 352 (1997) ("In criminal cases, appellate courts are bound by fact findings in response to preliminary motions where there has been conflicting testimony or where the findings are supported by the evidence and not clearly wrong or controlled by an error of law."). We conduct our analysis of Smith's arguments in light of this established standard of review.[2]

## B. *Terry* Stop and Patdown

The police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that the person is involved in criminal activity. *Terry,*

---

2. We note our Supreme Court has recently granted certiorari to resolve the question of whether certain Fourth Amendment determinations should be reviewed de novo on appeal pursuant to *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). *State v. Rodriquez,* 323 S.C. 484, 476 S.E.2d 161 (Ct.App.1996), *cert. granted,* (July 23, 1997). We include this standard of review as well as the traditional standard of review in South Carolina because both represent the current law. While it appears there is no substantial difference between the state and federal standards, we find the result of this case remains the same when reviewed under either standard.

392 U.S. 1, 88 S.Ct. 1868; *State v. Robinson,* 306 S.C. 399, 412 S.E.2d 411 (1991). "If the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances." *State v. Culbreath,* 300 S.C. 232, 236, 387 S.E.2d 255, 257 (1990), *abrogated on other grounds by Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

■ Generally, the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see Knight v. State,* 284 S.C. 138, 325 S.E.2d 535 (1985) (an officer may stop an automobile and briefly detain the occupants, even without probable cause to arrest, if he or she has a reasonable suspicion the occupants are involved in criminal activity).

Recognizing the risk involved when a police officer approaches a person seated in an automobile, the Supreme Court has held, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 333 n. 6, 54 L.Ed.2d 331 (1977). Applying its decision in *Terry* the Supreme Court in *Mimms,* also held subsequent to a valid *Terry* stop for a traffic violation, a police officer may search the individual for weapons where he or she has reason to believe the person is armed and dangerous. *Mimms,* 434 U.S. at 111–12, 98 S.Ct. at 334; *see Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

■ In assessing whether a suspect is armed and dangerous, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. Moreover, "in justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880; *State v. Fowler,* 322 S.C. 263, 471 S.E.2d 706 (Ct.App.1996), *cert. denied,* (Dec. 19, 1996), *and cert. denied,* —— U.S. ——, 117

S.Ct. 1823, 137 L.Ed.2d 1030 (1997) (in order to support his or her decision to "frisk" a defendant subsequent to a valid *Terry* stop, an officer must be able to specify the particular facts on which he or she based his or her belief the suspect was armed and dangerous).

■ Because Thickens observed Smith speeding, he was justified in stopping Smith. Once Smith was lawfully detained for speeding, the officers could ask Smith to step out of the vehicle. We must now decide whether Russell was justified in conducting a patdown for weapons.

■ We find when the facts of this case are considered as a whole and from the point of view of a reasonably prudent officer, Russell had reasonable suspicion to perform the patdown for weapons. Russell arrived after Thickens had stopped Smith late at night on a deserted road for a traffic violation. When he arrived, Thickens was speaking with the passenger, Gunning. Russell testified when he approached the driver's side of the vehicle, he noticed "the driver was acting [a] little bit edgy, looking around et cetera, at which time I thought for officer safety, better to bring him out of the vehicle to keep him away from any weapons opportunity." When asked what was the purpose of the patdown, Russell responded, "for weapons." All of these facts taken together gave rise to a reasonable suspicion Smith might be armed and dangerous and justified Russell's patdown of Smith.

### C. "Plain–Feel" Doctrine

Smith next argues even if the stop and decision to patdown for weapons was valid, the patdown itself exceeded the bounds established by *Terry* and *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

In *Dickerson,* a police officer stopped a suspect and conducted a patdown search. Although the search did not reveal any weapons, the officer conducting the search took an interest in a small lump in the suspect's nylon jacket. The officer later testified, "as I pat-searched the front of his body, I felt a lump, a small lump, in the front, pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane." *Id.* at 369, 113 S.Ct. at 2133. The officer then reached into the suspect's pocket and retrieved a small plastic bag containing one-fifth of one gram of crack cocaine.

On appeal, the Supreme Court considered the question of whether police officers may seize nonthreatening contraband detected through the sense of touch during a protective pat-down search permitted by *Terry*. *Id.* at 373, 113 S.Ct. at 2135–36. The Court held officers could do this as long as the officers' search stays within the bounds marked by *Terry*. *Id.* The Court stated:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375–76, 113 S.Ct. at 2137. The Court noted the purpose of the *Terry* search is not to discover evidence of a crime, but to allow the officer to pursue his or her investigation without fear of violence. *Id.* at 373, 113 S.Ct. at 2135–36.

Applying the "plain-feel" exception, the Court stated, "[a]though the officer was lawfully in a position to feel the lump in respondent's pocket, because *Terry* entitled him to place his hands on respondent's jacket, . . . the incriminating character of the object was not immediately apparent to him." *Id.* at 379, 113 S.Ct. at 2139. The Court emphasized the officer determined the lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a pocket which the officer already knew contained no weapon." *Id.* at 378, 113 S.Ct. at 2138. The Court found the continued search of respondent's pocket was beyond that authorized by *Terry* and the fruits of the search were inadmissible. *Id.* at 379, 113 S.Ct. at 2139.

At the suppression hearing in the instant case, Russell testified when he patted down Smith, "I felt a bulge in his left jacket side and you know it was obvious to me it was a baggy of some type." He further stated, "after being in law enforcement for so long, you know, it's touch and feel it was obvious to me that it was some kind of narcotic." Upon feeling the baggy, Russell asked Smith, "what's this your reefer?" Smith responded, "Yeah, man, that's my reefer."

On cross-examination, Russell testified when he felt the baggy he "knew it was some type of narcotic." He testified one of the reasons he wanted to feel the bulge was to make sure it was not a weapon. He said he did not need to determine the contents of the baggy, because he "already knew. I didn't have to determine it, you know, I felt it." On re-direct, when the solicitor asked Russell whether it was immediately apparent to him what the bag was when he first touched it, he responded, "Correct."

 In this case, the incriminating character of the evidence seized was immediately apparent in view of Russell's experience, the contour of the object, and Smith's response to Russell's question.[3] Moreover, we note Russell's brief questioning did not exceed the permissible bounds of a *Terry* search.[4] *See State v. Scott,* 518 N.W.2d 347 (Iowa 1994), *cert. denied,* 513 U.S. 1002, 115 S.Ct. 515, 130 L.Ed.2d 421 (1994) (officer did not conduct improper search in violation of the Fourth Amendment by asking defendant nature of object in his pocket after officer patted down object and determined that it was not a weapon); *State v. Benjamin,* 124 N.C.App. 734, 478 S.E.2d 651 (1996) (officer had probable cause to seize objects he felt during patdown after defendant stated the objects were "crack" in response to the officer's question).

3. Russell had eleven years of law enforcement experience.

4. At the hearing, Smith's counsel pointed out that Thickens had noted in his investigation report that Smith's response was "sarcastic." However, when Smith's counsel asked Thickens whether he felt Smith was not being serious about the fact there was marijuana in the package, Thickens responded, "No, my meaning is in an offhand way he said yeah, man that's my reefer. Or yeah, sure, something like that." Russell testified he asked the question even though he knew what the baggy contained. Smith's counsel argued because the response was allegedly sarcastic, it could not be used as an admission Smith had drugs.

We give due weight to the trial court's finding that Smith's statement constituted an admission that he was in possession of illegal drugs. *See Ornelas v. United States,* 517 U.S. 690, 700, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996) (reviewing court should give due weight to inferences drawn from facts by resident judges and law enforcement officers). Moreover, Smith has never asserted Russell's question violated his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Although there is testimony in the record Russell squeezed the outside of Smith's jacket, we do not find this sufficient to invalidate the seizure under *Dickerson.* *See Andrews v. State,* 221 Ga.App. 492, 471 S.E.2d 567 (1996) (seizure of cookie of crack cocaine under "plain feel" doctrine valid where officer squeezed the object in defendant's shorts to confirm his initial belief that it was crack cocaine); *In the Interest of B.C.,* 453 Pa.Super. 294, 683 A.2d 919 (1996) (seizure of baggy containing packets of crack cocaine justified under "plain-feel" doctrine where officer squeezed suspect's pants' pocket and immediately recognized the bulge as packets of a controlled substance); *Strickland v. State,* 923 S.W.2d 617 (Tex.Ct.App. 1995) (officer's search for weapons did not exceed the bounds of *Terry* where he moved his fingertips across an object in defendant's pocket, but did not extensively manipulate defendant's pocket or its contents and immediately recognized the object as a crack pipe).

In this case, Russell testified he "squeezed the outside of [Smith's] jacket," and "squeezed around the package." He stated after doing this, "there was no doubt in my mind it was marijuana after feeling it." Russell also admitted he felt the package through the jacket with his fingertips, the palm of his hand, and the entire hand.

However, when Smith's counsel asked Officer Russell whether he wanted to squeeze the bulge to make sure it was not a weapon, he responded, "No, once the first time I felt it, it was obvious to me that was a bag." Moreover, Russell testified he did not have to determine the contents of the baggy because he already knew when he felt it.

As such, we find this case is distinguishable from *Dickerson* in that Russell detected the drugs during the initial search for weapons rather than a further search. Other than the squeeze described by Russell, his testimony indicates he determined the object was contraband as soon as he felt it. Unlike the patdown in *Dickerson,* Russell's identification of the substance did not require additional squeezing or manipulation. Moreover, when Russell questioned Smith about the object, he responded the object was "[his] reefer."

Smith contends this Court's decision in *State v. Abrams,* 322 S.C. 286, 471 S.E.2d 716 (Ct.App.1996), *cert. denied,* (Nov. 20,

1996), is controlling. In *Abrams,* this Court applied the holding of *Dickerson.* We found the *Terry* stop of Abrams was valid, but the scope of the search was not. *Id.* at 288, 471 S.E.2d at 717. When the officer patted Abrams down with the palm of his hand and fingers, he felt a "hard instrument" in Abrams's right front pocket. He described the object as "tube like" and "about the size of a shotgun shell." *Id.* at 287, 471 S.E.2d at 717. He testified at the time he thought the object "could have been a shotgun shell or an instrument used to transport contraband," when he "found out that there were no weapons on [Abrams's] person." *Id.* at 289, 471 S.E.2d at 717. Because the officer believed the object to be a container for drugs, he pulled it out of Abrams's pocket. The object was a "Tylenol" bottle covered in black tape. The officer opened the bottle and found crack cocaine. *Id.* at 287, 471 S.E.2d at 717. Applying *Dickerson,* we found the limited purpose of *Terry* was satisfied when the officer discovered there were no weapons on Abrams. *Id.* at 289, 471 S.E.2d at 718. We concluded any further search was impermissible and the fruits of the further search should have been suppressed. *Id.*

The instant case is distinguishable from *Abrams.* Unlike the officer in *Abrams,* the incriminating character of the object was immediately apparent to Russell during the pat-down for weapons. Specifically, he testified "after being in law enforcement for so long, you know, it's touch and feel it was obvious to me that it was some kind of narcotic." On cross-examination, Russell testified when he felt the baggy he "knew it was some type of narcotic." He testified one of the reasons he wanted to feel the bulge was to make sure it was not a weapon. He said he did not need to determine the contents of the baggy, because he "already knew. I didn't have to determine it, you know, I felt it." On re-direct, when the solicitor asked Russell whether it was immediately apparent to him what the bag was when he first touched it, he responded, "Correct." Additionally, unlike Abrams, Smith admitted to Russell the object in his pocket was contraband.

Accordingly, we find the trial judge properly denied Smith's motion to suppress.

## II. RESISTING ARREST CONVICTION

Smith asks this Court to reverse his conviction for resisting arrest. His argument consists of a single sentence

562

and a single citation. Moreover, the record on appeal does not indicate whether Smith moved for a directed verdict or a new trial on this charge. Furthermore, Smith did not raise this issue in his statement of issues on appeal. Accordingly, we find this issue is not preserved for our review. *See* Rule 207(b)(1)(B), SCACR (no point will be considered which is not set forth in the statement of the issues on appeal); *State v. Black*, 319 S.C. 515, 462 S.E.2d 311 (Ct.App.1995) (an issue is deemed abandoned if the argument in the brief is only conclusory); *Zaman v. South Carolina Bd. of Med. Exam'rs*, 305 S.C. 281, 408 S.E.2d 213 (1991), *cert. denied*, 502 U.S. 869, 112 S.Ct. 200, 116 L.Ed.2d 160 (1991) (the record must show that the issue was raised in the trial court).

Accordingly, the decision of the trial judge is

**AFFIRMED.**

CURETON and GOOLSBY, JJ., concur.