577 S.E.2d 498

The STATE, Respondent,

v.

Charles BUTLER, Appellant.

No. 3601.

Court of Appeals of South Carolina.

Heard Dec. 11, 2002.

Decided Feb. 24, 2003.

384

Assistant Appellant Defender Robert M. Dudek and Assistant Appellate Defender Tara S. Taggart, both of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Senior Assistant Attorney General Norman M. Rapoport, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for respondent.

PER CURIAM:

Charles Butler was indicted for trafficking in cocaine and unlawful possession of a pistol. A jury convicted him of both charges and the trial court sentenced him to ten years imprisonment for trafficking in cocaine and three years imprisonment for unlawful possession of a pistol. Butler appeals arguing the trial court erred in denying his motion to suppress the evidence obtained as a result of an unlawful search. We reverse and remand.

### FACTUAL/PROCEDURAL BACKGROUND

Officer Todd Cook testified that on the evening of February 23, 2000, he stopped a van because the vehicle had no taillights. The driver exited the van and he and Officer Cook walked to the rear of the vehicle. Cook stated that, as he was writing out a warning ticket to the driver for defective rear lights, he could smell an odor of alcohol coming from the driver. He asked the driver whether there was anything inside the van he needed to know about, such as "illegal contraband" (sic) or any alcohol. Cook stated that he had a

suspicion that there was some alcohol in the van because he could smell it on the driver and stated, "for my safety and his safety I just wanted to check, make sure nothing illegal— anything else was going on with the traffic stop." Additionally, Officer Cook testified "when he [the driver] was walking towards me from the van, I smelled alcohol." He could not tell if the alcohol was coming from the driver or inside the van, but he suspected there was alcohol in the van. Cook proceeded to the passenger side of the van to get "the passenger out." Butler was the passenger he removed from the van. Officer Cook also indicated there were additional passengers in the back seat of the van.

Butler objected to admissibility of the evidence Officer Cook obtained as a result of the stop and subsequent search of Butler. The trial court excused the jury and conducted an in camera hearing.

During the in camera hearing, Officer Cook testified as follows during direct examination:

Q: Trooper, why did you get the individuals that were inside the van out?

A: For my protection and their protection.

Q: What were you going to do when you got them out?

A: Do a routine pat down.

Q: A pat down?

A: Yes.

Q: Terry frisk, okay. Did you check the passenger? Did you attempt to check the passenger for weapons or a weapon?

A: Yes sir, I did.

Q: What happened after you attempted to check for weapons?

A: The passenger, Mr. Butler fled on foot.

Q: What was the result of your check of him or your pat down of him?

A: Just his outer clothes.

\* \* \*

Q: What did you do and what did you find? Did you feel anything?

A: Yes, sir. During my pat down I patted down the pocket and outside the pocket, and I felt what felt like to be a pistol. And at that time, he took off running.

\* \* \*

Q: [Y]ou got the individuals out for a pat down because there were other ones there?

A: Yeah.

Q: Okay.

A: I had suspicion that there was alcohol in the van from the traffic stop.

During cross-examination of Officer Cook, he testified as follows:

Q: [W]as [Butler] doing anything wrong, that you could see, in the van ... when he was sitting there?

A: Well, I was in the process of investigating.

Q: But was he doing anything wrong to cause you to investigate him, sit down in the front seat?

A: I mean—

Q: What was he doing but sitting there?

A: Well, you know, I smelled alcohol. I thought it was coming from inside the van, and that's what—if that's what you're asking me.

Q: What was this man doing?

A: I was investigating further.

When asked on re-direct why he removed Butler from the van, Officer Cook indicated that the driver had given him an incorrect name for the passenger, and that there were "a lot of suspicions going on." Officer Cook stated that he could not see what Butler was doing inside the van and when asked why that was a danger he stated: "Because the driver, when I asked the driver about the alcohol, if there's anything in the van, he stated to me no, there was not, and he gave me the passenger—or a different name than what the passenger's real name was." He further stated that in order to ascertain

whether anybody in the van had a weapon or was a threat to him he had to "[g]et each one of them out and talk to them and pat them down."

Butler argued Officer Cook did not have reasonable suspicion to conduct a search of Butler, and moved to suppress any evidence which resulted from the search. The trial court determined that Officer Cook "was entitled to at least ask the passengers to vacate the van and do a pat down search before" using his flashlight to look in the van because he had a "reasonable suspicion of criminal activity, i.e., the smell of alcohol." The trial court further stated he didn't think Officer Cook was afraid of Butler, but believed Cook conducted the pat down search as part of his continuing investigation for open containers in the van. The court therefore ruled the officer had a reasonable suspicion of criminal activity based on the smell of alcohol coming from the van, and the officer was therefore entitled to conduct a search for an open container and remove the passengers from the vehicle.

Officer Cook testified in the presence of the jury, that when he searched Butler and found the gun, Butler ran away into some woods. Officer Cook shortly thereafter apprehended Butler and seized a large bag of cocaine and $863.00 from Butler's pants' pocket, as well as the pistol from his jacket pocket.

The jury found Butler guilty of trafficking in cocaine and unlawful possession of a pistol. Butler appeals.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only. We are bound by the trial court's factual findings unless they are clearly erroneous. This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001) (citations omitted). "Our review in Fourth amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding." *State v. Green*, 341 S.C. 214, 219 n. 3, 532 S.E.2d 896, 898 n. 3 (Ct.App.2000) (relying on *State v. Brockman*, 339 S.C. 57, 528 S.E.2d 661 (2000)).

## LAW/ANALYSIS

Butler argues the trial court erred in finding there was reasonable suspicion to justify a warrantless search under *Terry v. Ohio,*[1] and in failing to suppress the evidence obtained as a result of the search of Butler. We agree.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment does not proscribe all contact between police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (quoting *United States v. Martinez–Fuerte,* 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976)). The stopping of a vehicle and the detention of its occupants constitutes a seizure and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). "A police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person is involved in criminal activity." *State v. Woodruff,* 344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct.App. 2001). In determining whether reasonable suspicion exists, the circumstances must be considered as a whole, and if the officer's suspicions are confirmed or further aroused, the stop may be prolonged and the scope enlarged. *Id.* The scope and the duration of the seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper. *Sikes v. State,* 323 S.C. 28, 30, 448 S.E.2d 560, 562 (1994).

Observing that traffic stops may be dangerous encounters for police officers, the United States Supreme Court has held that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver and

---

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

passengers to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures. *Maryland v. Wilson*, 519 U.S. 408, 412–15, 117 S.Ct. 882, 885–86, 137 L.Ed.2d 41 (1997). Under the mandates of *Terry*, however, a police officer must have a reasonable suspicion that an individual is armed and dangerous before conducting a pat down or frisk of the person. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. The question is whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id. See also Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993) (when an officer is justified in believing the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, the officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon; purpose of limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence); *Maryland v. Buie*, 494 U.S. 325, 332, 110 S.Ct. 1093, 1097, 108 L.Ed.2d 276 (1990) (limited pat-down for weapons is authorized where a reasonably prudent officer would be warranted in the belief, based on specific and articulable facts, and not on a mere inchoate and unparticularized suspicion or hunch, that he is dealing with an armed and dangerous individual).

 It is undisputed Officer Cook had reasonable suspicion to stop the vehicle in which Butler was a passenger, based on the traffic violation. Furthermore, Officer Cook was justified in extending the scope and duration of the traffic stop based on his suspicion that open containers of alcohol may have been in the van. It is also clear the officer could order the driver and passengers to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures. The question before us, however, is whether Officer Cook had reasonable suspicion to conduct a pat-down or frisk of Butler.

[B]efore the police may frisk a defendant, they must have a reasonable belief the defendant is armed and dangerous. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In other words, a reasonable person in the position of the officer must believe the frisk was necessary

to preserve the officer's safety. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer must be able to specify the particular facts on which he or she based his or her belief the suspect was armed and dangerous. *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (an officer is not entitled to seize and search every person on the street; mere knowledge of the suspect being a known narcotics dealer who put his or her hand into a pocket as the police approached does not provide justification); *cf. United States v. Moore*, 817 F.2d 1105 (4th Cir.1987) (justification found where suspect was observed in the vicinity of a building late at night, shortly after the alarm sounds, and the street is dark, the officer is alone, and the suspected crime is burglary), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987).

*State v. Fowler*, 322 S.C. 263, 267, 471 S.E.2d 706, 708 (Ct.App.1996); *see also State v. Burton* 349 S.C. 430, 439, 562 S.E.2d 668, 673 (Ct.App.2002) (once a basis for a lawful investigatory stop exists, an officer may protect himself during the stop by conducting a frisk for weapons if he has reason to believe the suspect is armed and dangerous; in justifying the intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion).

Noting that "[t]he indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger" to an officer, the United States Fourth Circuit Court of Appeals has found that where an officer has reasonable suspicion that drugs are present in a vehicle lawfully stopped, there is an appropriate level of suspicion of criminal activity and apprehension of danger to justify a pat-down or frisk of both the driver and the passengers. *U.S. v. Sakyi*, 160 F.3d 164, 169–70 (4th Cir.1998). Thus, the court held, "in connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." *Id.* at 169. Additionally, our court has found reasonable suspicion existed for an officer to conduct a pat down search of an individual under a variety of circum-

stances where the officer articulated sufficient facts to justify the search. *See e.g., State v. Blassingame,* 338 S.C. 240, 249, 525 S.E.2d 535, 540 (Ct.App.1999) (frisk by officer was proper under the circumstances because a reasonably prudent man, when faced with a man who met the description of an armed carjacker, kidnapper, and robber who could not satisfactorily explain why he was in the area, would be warranted in a belief that his safety was in danger); *State v. Smith,* 329 S.C. 550, 495 S.E.2d 798 (Ct.App.1998) (finding reasonable suspicion individual might be armed and dangerous, justifying a pat down, where officer stated the driver was acting a little bit edgy, fidgeting and looking around on the inside like he was looking for a weapon, such that he thought for officer safety he should remove him from the vehicle to keep him away from any weapons opportunity); *State v. Lesley,* 326 S.C. 641, 644, 486 S.E.2d 276, 277 (Ct.App.1997) (finding officer could reasonably have believed driver of a brown Honda would be armed and dangerous where the officer "understood the following from the information related to him by the dispatcher and his own observations: (1) a female complainant had two days earlier reported a shooting incident to the police; (2) the complainant saw two black males in two separate cars drive by her home; (3) she described one automobile as a brown-colored Honda bearing paper tags that advertised Breakaway; (4) the driver in each car had made a gesture toward her; (5) she felt their actions were connected with the shooting incident; (6) there could be weapons on the drivers' persons or in their cars; and (7) a brown-colored Honda equipped with Breakaway paper tags and driven by a black male was in the area where the cars were reported as having been seen.").

Here, the trial court failed to make any determination that the officer had the necessary apprehension of danger to justify a pat-down search of Butler. Indeed, the trial court found the officer had no fear of Butler, but was merely continuing his investigation of a possible open container violation.[2] Clearly, the trial court improperly assumed if the

---

2. *See State v. Woodruff,* 344 S.C. at 553, 544 S.E.2d at 298 (where second search of individual was unrelated to reasonable apprehension individual was armed with a weapon, such behavior constituted "the very type of evidentiary search, or 'fishing expedition,' *Terry* expressly

officer was entitled to remove Butler from the vehicle in furtherance of his investigation, he was automatically entitled to frisk the passenger. The law is settled, though, that there must be a showing that the officer had a reasonable fear for himself or for the safety of others to justify the greater intrusion of a pat-down.

The appellate court, however, does not review the trial court's determination *de novo*, but applies a deferential standard of review, and will reverse only if there is clear error in its ruling. *State v. Khingratsaiphon*, 352 S.C. 62, 572 S.E.2d 456 (2002). Thus, this court will affirm if there is any evidence to support the decision, regardless of the basis of the trial court's ruling. *Id.* In accessing whether a suspect is armed and dangerous, the officer need not be absolutely certain the individual is armed; rather the question is whether a reasonably prudent person in those circumstances would be warranted in the belief that his safety or that of others is in danger. *Id.* The officer must be able to point to specific articulable facts which, taken together with reasonable inferences, reasonably warrant the intrusion. *Id.*

Turning to the facts of this case, we find Officer Cook failed to articulate any facts indicating he believed Butler was armed and dangerous, or that he feared for his safety or that of others. Officer Cook merely stated he was suspicious. He did not indicate what his specific suspicions were and, particularly, did not indicate he was suspicious that Butler was armed or dangerous. The only basis for any suspicion he had was that he smelled alcohol and the driver had provided him with an incorrect name for the passenger.[3] *See State v. Burton*, 349 S.C. at 440, 562 S.E.2d at 673 (where only activity detective pointed to as "suspicious" was individual's refusal to answer questions and fact that individual kept his right hand in his coat pocket, detective failed to articulate valid reasonable

refused to authorize and which has been condemned time and again by the United States Supreme Court, as well as the courts of this State.").

**3.** It is not clear from the record at what point the officer actually determined the driver had provided him with an incorrect name for Butler. Argument of counsel at the trial level suggests the officer assumed the name was incorrect because Butler failed to respond when the officer called the name.

suspicion for stop and search of individual, in spite of detective's testimony he feared for safety of those around him). Further, this case does not involve a heightened apprehension of danger based upon a reasonable suspicion of drug activity, allowing the conclusion that guns would likely be present. Finally, although Officer Cook indicated he would have to remove all the passengers from the van and frisk them in order to ascertain whether anyone in the van had a weapon or was a threat to him, he failed to specify the particular facts upon which he based any fear that the passengers were armed and dangerous. *See U.S. v. Sakyi,* 160 F.3d at 168–69 (generalized risk to officer safety is insufficient to justify a routine pat-down of all passengers as a matter of course).

Accordingly, we find that Officer Cook's search of Butler was unlawful and that the trial court erred in failing to suppress the evidence that resulted from the search. *See State v. Copeland,* 321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996) ("The 'fruit of the poisonous tree' doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality.").

**REVERSED AND REMANDED.**

GOOLSBY, HUFF, and SHULER JJ., concur.