656 S.E.2d 748

**The STATE, Respondent,**

v.

**James ODOM, Appellant.**

**No. 4327.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2007.
Decided Dec. 20, 2007.
Rehearing Denied Feb. 14, 2008.

332

Jared S. Newman, of Beaufort, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Shawn L. Reeves, all of Columbia; and Solicitor I. McDuffie Stone, III, of Beaufort, for Respondent.

HEARN, C.J.

James Odom appeals the circuit court's determination that police had probable cause to seize him in a traffic stop. He further argues that because the stop was illegal, the marijuana

seized during the stop should have been suppressed. We affirm.

## FACTS

On September 4, 2002, Odom was pulled over by two officers who witnessed Odom driving a vehicle without wearing a seatbelt. Officer Carter, one of the two officers who witnessed the violation, approached Odom's vehicle to explain to him why he had been pulled over. As Carter drew near to Odom's vehicle, he smelled a strong odor of marijuana and recognized a Swisher–Sweet cigar[1] on the dashboard. Carter asked Odom if he had smoked marijuana, and Odom admitted he had done so earlier that same morning. In addition, Carter noticed a security guard belt with a gun holster in the rear passenger seat, although the holster was empty at the time.

Believing that a weapon could be present, Carter asked Odom to exit the vehicle and thereafter conducted a *Terry* frisk.[2] Carter testified he felt a bundle of leafy material in the breast pocket of Odom's jacket, which he immediately recognized as marijuana because of the extensive training he had received on the Drug Interdicton Force from the United States Department of Homeland Security. After finding the drugs, Carter placed Odom under arrest; continued his search; and located a second larger bag, and two smaller bags of marijuana, totaling 4.361 ounces.

Odom was indicted for possession of marijuana with the intent to distribute. At the start of the trial, Odom's counsel moved to suppress the marijuana as a product of an illegal search and seizure. The court overruled this motion. Following presentation of the state's case, the court, sitting non-jury, found Odom guilty and sentenced him to five years' confinement. This appeal followed.

---

1. Carter testified a Swisher–Sweet cigar is commonly known as a "blunt," which refers to a cigar that has been hollowed and refilled with marijuana. The term "blunt" was originally derived from the preferred brand of cigars for this operation, Phillies Blunts, but can refer to any brand of store-bought cigars. *See* Urban Dictionary, *available at* http://www.urbandictionary.com.

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

334

## STANDARD OF REVIEW

■ The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Gaster,* 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. McDonald,* 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000).

■ In criminal cases, the appellate court sits to review errors of law only. *State v. Butler,* 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App.2003). We are bound by the trial court's factual findings unless they are clearly erroneous. *Id.* at 388, 577 S.E.2d at 500–01. This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). Our review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding. *State v. Bowman,* 366 S.C. 485, 501, 623 S.E.2d 378, 386 (2005). An appellate court will reverse only when there is clear error. *Id.*

## LAW/ANALYSIS

### I. Existence of Probable Cause for Initial Seizure

■ Odom first asserts the circuit court erred in finding the officers had probable cause to seize him based on their limited opportunity to view whether he was wearing his seatbelt, the distance between the vehicles, and the dark tint of Odom's windows. We disagree.

Section 56–5–6520 of the South Carolina Code (Supp.2006) requires drivers or occupants to wear a complying, fastened safety belt when the motor vehicle in which they are riding is being operated on the public streets and highways of South Carolina. A law enforcement officer may pull over or stop a vehicle when the officer has probable cause of a seatbelt violation based on a clear and unobstructed view of someone within the vehicle who is not wearing a seatbelt. S.C.Code Ann. § 56–5–6540 (Supp.2006). Odom's counsel used a series of photos during his cross-examination of the arresting officers

in order to illustrate it would have been impossible for the officers to recognize a seatbelt violation, during similar circumstances. However, both Officer Carter and his fellow patrolman Officer Dansky, testified to clearly seeing Odom across an intersection from where they were parked, operating a motor vehicle without wearing a safety belt. Because there is testimony in the record upon which the circuit court could base its judgment, we cannot say the court abused its discretion in finding the officers had probable cause to seize Odom due to his seatbelt violation. *See Bowman*, 366 S.C. at 501, 623 S.E.2d at 386.

## II. Legality of Detainment and Patdown

■ Odom next asserts the circuit court erred in admitting evidence of marijuana found on him during the seizure. Specifically, Odom contends the search violated the safety belt legislation enacted by our legislature. We disagree.

■ Section 56–5–6540(D) of the South Carolina Code (Supp.2006) provides: "A vehicle, driver, or occupant in a vehicle must not be searched, nor may consent to search be requested by a law enforcement officer, solely because of a violation of this article." Odom argues the alleged seatbelt violation was the only cause for the subsequent search. We find this argument is misguided. As discussed above, a seatbelt violation can be the sole basis for a police officer to pull over a vehicle. Section 56–5–6540(D) emphasizes this initial seizure cannot be extended to a subsequent search without additional suspicion rising to the level of probable cause. In this case, Officer Carter smelled a strong odor of marijuana as he approached Odom's car and noticed a common indicium of paraphernalia, a Swisher–Sweet cigar, on the dashboard. Additionally, Odom admitted to smoking marijuana earlier in the day, and Officer Carter observed an empty gun holster in the back seat. Having cause to fear for his own safety and reasonable suspicion of the existence of drugs, Officer Carter asked Odom to exit the vehicle and conducted a *Terry* search.

■ In *Terry*, the United States Supreme Court announced that police may briefly detain and conduct a reasonable search for weapons where the officer has reason to believe the person is armed. *Terry v. State of Ohio*, 392 U.S.

1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Applying this concept, the Supreme Court has also held once a vehicle has been lawfully detained for a traffic violation, police officers may order the driver out of the vehicle and conduct a search for weapons where the officer believes the person is armed and dangerous. *Pennsylvania v. Mimms*, 434 U.S. 106, 111–12, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* at 27, 88 S.Ct. 1868. The existence of the evidence described above gave Carter the reasonable suspicion necessary to perform a patdown for weapons; therefore, Officer Carter's search was not solely based on Odom's seatbelt violation.[3]

### III. "Plain–Feel Doctrine"

▆▆ Finally, Odom contends the circuit court erred in admitting the marijuana because the video in the police squad car allegedly shows a violation of the "plain-feel" rule annunciated in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Odom argues even if the initial traffic stop and Carter's decision to patdown Odom were valid, the patdown exceeded the bounds established under *Terry* and confirmed in *Dickerson*. We disagree.

Before the start of the trial, Odom's counsel made a motion to suppress the evidence gained from the seizure and subsequent search. In support of this motion, Odom played the in-

---

3. Additionally, Odom contends this court should analogize the "solely" language of Section 56-5-6540(D) with the portion of the criminal domestic violence (CDV) statute which limits the admissibility of evidence found pursuant to a CDV complaint. S.C.Code Ann. § 16-25-70(H) (Supp.2006). We find this argument unavailing. Section 16-25-70(H) sets out criteria which expressly forbids the admissibility of evidence gained as a result of a complaint filed under the CDV statute, unless it falls under the two given exceptions: (1) if [the evidence] is found ... in plain view ... [or] pursuant to a search incident to a lawful arrest ... or (2) if it is evidence of a violation of this article. As decided above, the police officers conducted a lawful *Terry* frisk and search of Odom for reasons other than the seatbelt violation. *See State v. Cannon*, 336 S.C. 335, 339, 520 S.E.2d 317, 319 (1999). Furthermore, there is no explicit statutory exclusion language contained in Section 56-5-6540. Therefore, we find this argument is without merit.

car video of Officer Carter's stop, which Odom argues provides evidence Carter's frisk exceeded constitutional bounds. In *Dickerson*, the Supreme Court confronted for the first time the issue of a police officer who conducted a patdown search pursuant to *Terry* which did not yield a weapon; however, the officer recognized and seized nonthreatening contraband detected during the patdown. *Dickerson* at 369, 373, 113 S.Ct. 2130. Where the seizure remains within the bounds of *Terry*, the Court reasoned:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375–76, 113 S.Ct. 2130. However, the Court in *Dickerson* found the officer did not immediately recognize the incriminating character of the object in the suspect's pocket. Instead, it only became apparent after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a pocket which the officer already knew contained no weapon." *Id.* at 378, 113 S.Ct. 2130.

We find the case before us is distinguishable from *Dickerson*, and more closely aligned with our court's decision in *State v. Smith*, 329 S.C. 550, 495 S.E.2d 798 (Ct.App.1998) *cert. denied*. In *Smith*, police pulled a suspect over for speeding and, pursuant to a reasonable suspicion, asked the suspect to exit the vehicle and thereafter conducted a *Terry* search. The officer conducting the search testified he immediately recognized a bulge in one of the suspect's pockets as a narcotic despite admitting he "squeezed the outside of [suspect's] jacket" and "squeezed around the package." *Smith* at 560, 495 S.E.2d at 803. This court distinguished *Dickerson*, explaining, "[a]lthough there is testimony in the record [the police officer] squeezed the outside of [suspect's] jacket, we do not find this sufficient to invalidate the seizure under *Dickerson*." *Id.*

338

As in *Smith*, during Odom's pre-trial suppression hearing, Carter testified he recognized immediately the bundle of leafy material in the breast pocket of Odom's jacket as marijuana, testifying: "Once [Odom] steeped [sic] out of the vehicle I smelled a strong odor of marijuana coming from his body, started the search and felt the large bundle in his breast pocket then I knew what it was, it was a bag of marijuana." Accordingly, we find the circuit court did not abuse its discretion in finding Carter's search stayed within the bounds of *Terry*, as clarified in *Smith*, and allowing the fruits of that search to be admitted into evidence.

## CONCLUSION

Based on the foregoing, we hold the circuit court did not err: (1) in finding probable cause to initially seize Odom due to a seatbelt violation; (2) in admitting the marijuana seized during the search; or (3) in determining the officer's patdown search did not extend past the "plain-feel" rule allowed under *Terry*. The decision of the circuit court is accordingly

**AFFIRMED.**

KITTREDGE, J., and THOMAS, J., concur.