**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(D)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Reginald A. Nance, Appellant.

Appellate Case No. 2010-160486

---

Appeal From Pickens County
G. Edward Welmaker, Circuit Court Judge

---

Unpublished Opinion No. 2013-UP-215
Heard May 6, 2013 – Filed May 22, 2013

---

**AFFIRMED**

---

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Julie Kate Keeney, all of Columbia, for Respondent.

---

**PER CURIAM:** Reginald Nance appeals his conviction for possessing a weapon during the commission of a violent crime, arguing the trial court erred in refusing to direct a verdict in his favor after the State presented no evidence of a nexus between a pair of burglaries and a gun recovered from an automobile in the parking lot of the burglarized stores. We affirm.

An appellate court reviewing the denial of a motion for a directed verdict "views the evidence and all reasonable inferences in the light most favorable to the [S]tate. If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, [an appellate c]ourt must find the case was properly submitted to the jury." *State v. Weston*, 367 S.C. 279, 292-93, 625 S.E.2d 641, 648 (2006). "It is a well-established rule in criminal cases that unless there is a total failure of evidence tending to establish the charge laid in the indictment, the trial judge's ruling upon a motion for a directed verdict of acquittal must stand absent an error of law." *State v. Nix*, 288 S.C. 492, 496, 343 S.E.2d 627, 629 (Ct. App. 1986).

Section 16-23-490(A) of the South Carolina Code (2003) requires the imposition of a five-year prison sentence if "a person is in possession of a firearm . . . during the commission of a violent crime and is convicted of committing or attempting to commit a violent crime as defined in Section 16-1-60." Second-degree burglary is classified as a violent crime. S.C. Code Ann. § 16-1-60 (Supp. 2012). For the purposes of this statute, the possession of a firearm may be either actual or constructive. *State v. Jennings*, 335 S.C. 82, 86, 515 S.E.2d 107, 109 (Ct. App. 1999).

In 2012, our supreme court reviewed section 16-23-490(A) and determined that, in addition to possession of a weapon during the commission of a violent crime, the State must also prove a nexus between the weapon and the crime. *State v. Whitesides*, 397 S.C. 313, 318-19, 725 S.E.2d 487, 490 (2012). It reasoned:

> The subject matter and general purpose of the statute lead us to conclude that the General Assembly intended to penalize possession of a firearm only when possession furthers or is intended to further a violent crime. . . . Visibly displaying a knife or an object that appears to be a firearm furthers the criminal's objectives by increasing the cost of resistance or interference. Thus, a nexus is inherent in this prohibited conduct.

The statute also criminalizes the possession of a firearm during the commission of a violent crime even if not visibly displayed. Because a firearm has greater power to inflict harm, its mere presence at the scene of the crime is a greater threat than that of a knife or an object that appears to be a firearm. Thus, the General Assembly determined that merely possessing a firearm in furtherance of a violent crime warrants a penalty.

However, the fact that the General Assembly sought to deter even the possession of a firearm in connection with a violent crime does not suggest that it intended to criminalize any possession of a firearm, no matter how unrelated, during the commission of a violent offense. The General Assembly's evident purpose was to increase the penalty of engaging in more dangerous conduct, whether that conduct is displaying a knife, firearm, or object that appears to be a firearm or possessing a firearm in furtherance of a violent offense. The General Assembly's purpose would not be furthered by penalizing possession of a firearm that is entirely unrelated to the violent offense. Indeed, finding that no nexus is required may raise constitutional questions in some cases, since the Second Amendment protects the possession of lawful firearms by ordinary citizens. We have no reason to suppose that the General Assembly intended to create constitutional questions, and our interpretation of the statute avoids them.

In sum, we find that the General Assembly's purpose in enacting this statute was to penalize defendants who actually or constructively possess a firearm in order to further a violent crime and who thereby increase the attendant risk of harm. We therefore hold that such a nexus must be established in order to convict a defendant for possessing a firearm during the commission of a violent crime. . . .

A nexus may be established by showing that the firearm furthered, advanced, or helped in the commission of the crime. A nexus between possession of a firearm and drug trafficking would exist if the firearm is accessible to the trafficker and thereby provides defense against anyone who may attempt to rob the trafficker of his drugs or drug profits. Similarly, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted.

*Id.* at 317-19, 725 S.E.2d at 489-90 (citations, footnotes, and quotation marks omitted). In reaching this decision, our supreme court aligned South Carolina with other jurisdictions that had considered similar facts and law. *Id.* at 319, 725 S.E.2d at 490. In one of the cases cited by the *Whitesides* court, the Fifth Circuit Court of Appeals listed several factors that might assist in answering the question "whether a particular defendant's possession [of a weapon] further[ed], advance[d], or help[ed] forward" an offense. *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000). In reviewing a conviction for weapon possession connected to cocaine distribution,[1] the *Ceballos-Torres* court identified "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* at 414-15.

Here, Nance was convicted of two counts of second-degree violent burglary, each of which section 16-1-60 classifies as a violent offense. On appeal, Nance challenges the nexus between the gun and the burglaries but not his constructive possession of the gun. *Whitesides*, which was published during the pendency of

---

[1] We are aware most published opinions addressing the possession of a weapon during the commission of a violent crime result from prosecutions for drug-related offenses. Although cognizant of the "indisputable nexus between drugs and guns," we do not assume for purposes of this opinion that a similar connection exists between other crimes and guns. *See, e.g.*, *State v. Butler*, 353 S.C. 383, 391, 577 S.E.2d 498, 502 (Ct. App. 2003) (noting heightened danger to a law enforcement officer stopping a motorist suspected of drug offenses justifies a pat-down frisk of the motorist and passengers (quoting *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998))). Nonetheless, we find the *Ceballos-Torres* factors are useful in determining whether a nexus exists between a weapon and illegal activity.

Nance's appeal, is instructive. Under *Whitesides*, a nexus exists if the State presents evidence "the firearm furthered, advanced, or helped in the commission of the crime." *Id.* at 319, 725 S.E.2d at 490. We find the State presented evidence establishing a nexus between the gun and the burglaries.

The State demonstrated Nance purchased a car for his girlfriend and pretended to leave it at her house for the night. Instead, he used the car to pick up a friend and, together, the men broke into two businesses. The girlfriend testified Nance's zippered notebook, in which the gun was hidden, had not been in the car when she locked it for the night. Nance's cohort in the burglaries testified Nance had access to the gun each time he returned to the car, such as when he placed the drawer of rolled coins in the back seat.

When police officers arrived, Nance's car, engine running, was parked behind the burgled businesses. Officers found the gun hidden in the zippered notebook in the back seat area, mixed in with property stolen from the Local Cash Advance and Tobacco Warehouse, and within easy reach of Nance as he placed the stolen property in the car. According to the officer who found it, the gun was loaded, with eight rounds in the magazine and another in the chamber.

The majority of the *Ceballos-Torres* factors weigh in favor of a nexus. Nance burglarized two businesses and kept the handgun within reach as he put stolen goods into the car. The police officers who interrupted the burglary found the gun, which was loaded with nine rounds, inches away from the stolen property. Therefore, we find the evidence indicates Nance placed the gun in the car, and the gun "furthered, advanced, or helped in the commission" of the burglaries by providing a possible defense against anyone who either confronted Nance during the crime or attempted to take the stolen property away from him. Accordingly, the decision of the trial court is

**AFFIRMED.**

**SHORT and PIEPER, JJ., and CURETON, A.J., concur.**